**FILED**

JUN 3 0 2008

Clerk, U.S. District and
Bankruptcy Courts

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUBIA

SEAN M. GERLICH                                    )
Rue de Theux 91                                    )
B-1050 Brussels                                    )
Belgium,                                           )
             Plaintiff,              )
    v.                                          )
                                                   )
UNITED STATES DEPARTMENT OF JUSTICE                )
950 Penn, Ave., N.W.                               )
Washington, D.C. 20530-0001,                       )
                                                   )
             Defendant.              )
                                                   )

Case: 1:08-cv-01134
Assigned To : Bates, John D.
Assign. Date : 6/30/2008
Description: FOIA/Privacy Act

## COMPLAINT

1. This is a class action for both damages and injunctive relief in redress of harms caused by defendant's admitted wrongful conduct, of which plaintiff and all those similarly situated are aggrieved.

2. This Court has jurisdiction over this action pursuant to subsections (g)(1)(C) and (g)(1)(D) of the Privacy Act of 1974, 5 U.S.C. § 552a; the Civil Service Reform Act, 5 U.S.C. §§ 2301-02 (in conjunction with 28 C.F.R. § 42.1); the First Amendment to the Constitution; the Fourteenth Amendment to the Constitution; 28 U.S.C. § 1331; the Federal Records Act, 5 U.S.C. §§ 3301, et seq.; the Administrative Procedure Act, 5 U.S.C. §§ 701-706; and other laws of

the United States.

3. Plaintiff Sean M. Gerlich, a citizen of the United States, is an attorney who graduated from a top-tier law school with strong credentials, yet like others similarly situated was not selected by defendant United States Department of Justice as part of its Honors Program for graduating law students during the Fall of 2006.

4. Defendant United States Department of Justice is an agency of the Federal Government of the United States and as such owes a duty of fairness and proper compliance with legal requirements to those about whom it makes, inter alia, administrative determinations such as those involved in its Honors Program and Summer Law Intern Program. Acting through its employees, primarily Chief of Staff to the Deputy Attorney General Michael J. Elston, Deputy Associate Attorney General Esther S. McDonald, and (to a lesser extent) Office of Attorney Recruitment and Management Director Louis DeFalaise, under the supervision of Deputy Attorney General Paul J. McNulty, Acting Associate Attorney General William W. Mercer, and Principal Deputy Associate Attorney General Gregory G. Katsas, defendant on behalf of the United States breached its legal duty to plaintiff and many others similarly situated in its Honors Program and Summer Law Intern

2

Program decisionmaking during 2006. Reportedly, it likewise did so as to others at other times as well.

### Facts

5. On or about September 1, 2006, as a third-year law student and in advance of the program deadline, plaintiff applied for selection as part of defendant's Honors Program, along with many others similarly situated. His goal was to continue his career of federal service, and to commence his legal career as an attorney, by working as an attorney for the Department of Justice. Based upon his academic credentials and other qualifications, as well as his understanding of what ought to have been the strict fairness and evenhandedness of defendant's decisionmaking process for such career attorney positions, he had every basis for expecting that he would be able to do so.

6. As part of his overall qualifications, plaintiff's Honors Program application included the fact that he already had worked for defendant in a legal capacity -- i.e., that he had served in Department of Justice as a law clerk during the preceding summer, working in large measure directly for the head of one of the Department's forty components, someone who to both plaintiff and to others spoke very highly of plaintiff's work and his candidacy for an attorney position

3

upon graduation through the Department's Honors Program. On information and belief, this Department of Justice official did indeed provide strong statements in support of plaintiff's Honors Program application, but, like with many others, plaintiff's liberal affiliation(s) became a barrier to his application's success.

7. On or about November 15, 2006, plaintiff received notification from defendant that his Honors Program application had been accepted as timely and in good order but that his application was denied, without so much as an interview. No particular reason was given, which in context left the distinct impression that standards other than those ordinarily applied in the Honors Program had been applied in plaintiff's case, as well as in those of others.

8. Plaintiff was grossly disappointed by this action, to say the least, inasmuch as to him and to those around him it was greatly at variance with what was reasonably anticipated. It adversely affected his search for post-graduation employment as a new attorney at the outset of his legal career, causing both out-of-pocket job-search expenses and losses of valuable time that he otherwise would not have incurred, and it further caused shock, anger, humiliation, mental distress, emotional upset, loss of reputation and professional standing, loss of confidence in his government, disruption of planning and other inconvenience, and similar

4

personal harm in multiple respects. As a consequence, as he ended his third and final year of law school he approached graduation without an attorney position, and he ultimately moved to Belgium where he now resides.

9. Further, defendant's actions, as described below and evidenced in Defendant's Report, had the adverse effect of depriving plaintiff (and those similarly situated) of a fair opportunity to obtain the professional benefit of Honors Program employment and thereby the considerable value (economic as well as otherwise) that such employment holds for new law school graduates -- both immediately and residually throughout the continued course of their legal careers. In other words, such an adverse effect remains ongoing, for both those treated unfairly by defendant in Honors Program decisionmaking and those treated unfairly by defendant in Summer Law Intern Program decisionmaking as well.

10. On June 24, defendant, through its Office of the Inspector General and Office of Professional Responsibility, issued a report that directly related to the above-described circumstances, entitled, "An Investigation of Allegations of Politicized Hiring in the Department of Justice Honors Program and Summer Law Intern Program" ("Defendant's Report" or "Report").

11. This Report revealed that, as had been suspected based upon the 2007

5

congressional testimony of former Justice Department political aide Monica M.

Goodling, its Honors Program and Summer Law Intern Program appeared, in the

words of a principal malefactor in the process, former Chief of Staff to the Deputy

Attorney General Michael J. Elston, to "have been 'Monica-ized.'"  Report at 84.

12.  In fact, defendant's Inspector General and Counsel for Professional

Responsibility jointly found that nearly 190 Honors Program applicants and 170

Summer Law Intern Program applicants in 2006 had their applications rejected

amidst a blatantly politicized process of agency decisionmaking for those

programs. *See* Report at 38, 50.

13.  Worse yet, through their work preparing this Report, defendant's

investigators found that the process's other principal actor, former Deputy

Associate Attorney General Esther S. McDonald, engaged in the prohibited

practice of conducting Internet searches for information of a "political" or

"ideological" nature to use against the granting of applications, *see, e.g.*, Report at

41, 71-72, 73; *see also id.* at 77 (reporting "confirm[ation] that she conducted

searches on many of the candidates' names"), and that she actually had gone so far

as to create and maintain "printout" records of such Internet searches for

"attach[ment] to the candidate's application," *id.* at 82.

6

14. They also found evidence that neither Ms. McDonald nor Mr. Elston, by his own admission, had received adequate instruction or training on the proprieties of their enterprise, including instruction that would have made immediately apparent their breach of candidates' Privacy Act rights, *see id.* at 76, 80-81, and that even Mr. Elston, as the more senior of the two, did not act on his mere recognition that their actions had the "appearance" of being "problematic," because he just "'didn't have time' to address the issue," *id.* at 83.

15. In summary conclusion, this Report found that defendant's actions in both of these hiring programs, through these untrained high-level employees, "violated federal law" in multiple respects. Report at 96, 99; *see also id.* at 98.

16. What's more, and significant for purposes of this civil action, the Report also made clear that Justice Department employees already have engaged in the destruction of some of the record evidence of this misconduct. *See* Report at 68-69.

17. This Report was "accept[ed]" by Attorney General Michael B. Mukasey upon its issuance; it has not been controverted. Based upon it, it is now clear and firmly evidenced that hundreds of applicants to the Department's Honors Program like plaintiff, or its Summer Law Intern Program, were the subjects of flagrantly

unfair, improper, and unlawful treatment in the handling of their applications, to their distinct detriment, both immediate and continuing.

18. Further, while defendant has made and continues to make, in the words of Attorney General Mukasey, "institutional changes" aimed at correcting its past wrongful actions in this regard, there is no indication that it has taken sufficient corrective steps as to its legal obligations under either the Privacy Act or the Federal Records Act in such matters. The Report establishes both the need for such corrective steps to have been taken as well as clear evidence, by defendant's own hand, that in fact they have not adequately been taken to date, more than a year after defendant commenced, in stutter steps, its remedial focus on the situation.

### Count One: Violations of Privacy Act Subsection (e)(7)

19. Plaintiff hereby re-alleges all allegations in all above paragraphs.

20. Subsection (e)(7) of the Privacy Act provides that:

> Each agency that maintains a system of records shall . . . (7) maintain no record describing how any individual exercises rights guaranteed by the First Amendment unless expressly authorized by statute or by the individual about whom the record is maintained or unless pertinent to and within the scope of an authorized law enforcement activity.

8

21. Defendant maintained records about plaintiff in connection with its determination of the result of his 2006 Honors Program application, records which were part of a system of records within the meaning of the Privacy Act.

22. According to Defendant's Report, such records included "printouts of [Internet] search results" that were created by Deputy Associate Attorney General Esther S. McDonald -- who "conducted Internet searches on the candidates using Google and MySpace" and "searched for organizations to which candidates belonged" -- as well as her written "comments on the applications throughout the process concerning the liberal affiliations of candidates she rejected," including "memberships" that a "candidate's application did not mention." Defendant's Report at 76-83; *see also id.* at 92-96. Such records were maintained also by Chief of Staff to the Deputy Attorney General Michael J. Elston. *See id.* at 79-83, 92-96.

23. Plaintiff did not mention any of his such memberships or affiliations in his application. Such activities include the exercise of rights guaranteed by the First Amendment, including the freedoms of speech and association, within the meaning of Privacy Act subsection (e)(7).

24. In handling the Honors Program applications and related records

regarding him and others similarly situated in the above-described fashion,

defendant through its employees violated their rights under Privacy Act subsection

(e)(7), affecting them adversely, and it did so with intentional or willful conduct,

including conduct constituting more than gross negligence.

### Count Two:  Violations of Privacy Act Subsection (e)(5)

25.  Plaintiff hereby re-alleges all allegations in all above paragraphs.

26.  Subsection (e)(5) of the Privacy Act provides that:

> Each agency that maintains a system of records shall . . . (5) maintain
> all records which are used by the agency in making any determination
> about any individual with such accuracy, relevance, timeliness, and
> completeness as is reasonably necessary to assure fairness to the
> individual in the determination.

27.  Defendant maintained records about plaintiff in connection with its

determination of the result of his 2006 Honors Program application, records which

were part of a system of records within the meaning of the Privacy Act.

28.  According to Defendant's Report, such records included "printouts of

[Internet] search results" that were created by Deputy Associate Attorney General

Esther S. McDonald -- who "conducted Internet searches on the candidates using

Google and MySpace" and "searched for organizations to which candidates

belonged" -- as well as her written "comments on the applications throughout the

process concerning the liberal affiliations of candidates she rejected," including

"memberships" that a "candidate's application did not mention." Defendant's

Report at 76-83; *see also id.* at 92-96. Such records pertaining to political

affiliations were maintained also by Chief of Staff to the Deputy Attorney General

Michael J. Elston. *See id.* at 79-83, 92-96.

29. Records maintained by defendant as part of plaintiff's 2006 Honors

Program application were required by law to not unnecessarily include (i.e.,

beyond that which was submitted by the applicant himself or herself) records

reflecting an individual's political or ideological affiliations.

30. In handling the Honors Program applications and related records

regarding him and others similarly situated in the above-described fashion,

defendant through its employees failed to maintain their records "with such

accuracy, relevance, timeliness, and completeness as [was] reasonably necessary

to assure fairness to [them] in [defendant's] determination[s]."

31. In handling the Honors Program applications and related records

regarding him and others similarly situated in the above-described fashion,

defendant through its employees violated their rights under Privacy Act subsection

(e)(5), affecting them adversely, and it did so with intentional or willful conduct,

11

including conduct constituting more than gross negligence.

### Count Three:  Violations of Privacy Act Subsection (e)(10)

32.  Plaintiff hereby re-alleges all allegations in all above paragraphs.

33.  Subsection (e)(10) of the Privacy Act provides that:

> Each agency that maintains a system of records shall . . . (10)
> establish appropriate administrative, technical and physical
> safeguards to insure the security and confidentiality of records and to
> protect against any anticipated threats or hazards to their security or
> integrity which could result in substantial harm, embarrassment,
> inconvenience, or unfairness to any individual on whom information
> is maintained.

34.  Defendant maintained records about plaintiff in connection with its

determination of the result of his 2006 Honors Program application, records which

were part of a system of records within the meaning of the Privacy Act.

35.  According to Defendant's Report, such records included "printouts of

[Internet] search results" that were created by Deputy Associate Attorney General

Esther S. McDonald -- who "conducted Internet searches on the candidates using

Google and MySpace" and "searched for organizations to which candidates

belonged" -- as well as her written "comments on the applications throughout the

process concerning the liberal affiliations of candidates she rejected," including

"memberships" that a "candidate's application did not mention."  Defendant's

Report at 76-83; *see also id.* at 92-96. Such records pertaining to political affiliations were maintained also by Chief of Staff to the Deputy Attorney General Michael J. Elston. *See id.* at 79-83, 92-96.

36. Records maintained by defendant as part of plaintiff's 2006 Honors Program application were required by law to not unnecessarily include (i.e., beyond that which was submitted by the applicant himself or herself) records reflecting an individual's political or ideological affiliations.

37. In handling the Honors Program applications and related records regarding him and others similarly situated in the above-described fashion, defendant through its employees failed to meet their obligations to maintain such records with sufficient safeguards to protect their integrity and avoid unfairness in its determinations and decisionmaking.

38. As well, the manner in which Chief of Staff Elston maintained such records, and engaged in lax supervision over them and employees who had access to them, was itself inappropriate. *See* Report at 68-69, 79-91, 94-96.

39. On information and belief, and as is evidenced in Defendant's Report, defendant took no meaningful action to comply with its subsection (e)(10) obligations for its instant records-maintenance and decisionmaking processes.

40.  In handling the Honors Program applications and related records regarding plaintiff and others similarly situated in the above-described fashion, defendant through its employees violated their rights under Privacy Act subsection (e)(10), affecting them adversely, and it did so with intentional or willful conduct, including conduct constituting more than gross negligence.

### Count Four:  Violations of Privacy Act Subsection (e)(1)

41.  Plaintiff hereby re-alleges all allegations in all above paragraphs.

42.  Subsection (e)(1) of the Privacy Act provides that:

> Each agency that maintains a system of records shall . . . (1) maintain in its records only such information about an individual as is relevant and necessary to accomplish a purpose of the agency required to be accomplished by statute or by Executive order of the President.

43.  Defendant maintained records about plaintiff in connection with its determination of the result of his 2006 Honors Program application, records which were part of a system of records within the meaning of the Privacy Act.

44.  According to Defendant's Report, such records included "printouts of [Internet] search results" that were created by Deputy Associate Attorney General Esther S. McDonald -- who "conducted Internet searches on the candidates using Google and MySpace" and "searched for organizations to which candidates belonged" -- as well as her written "comments on the applications throughout the

14

process concerning the liberal affiliations of candidates she rejected," including

"memberships" that a "candidate's application did not mention." Defendant's

Report at 76-83; *see also id.* at 92-96. Such records pertaining to political

affiliations were maintained also by Chief of Staff to the Deputy Attorney General

Michael J. Elston. *See id.* at 79-83, 92-96.

45. Records maintained by defendant as part of plaintiff's 2006 Honors

Program application were required by law to not unnecessarily include (i.e.,

beyond that which was submitted by the applicant himself or herself) records

reflecting an individual's political or ideological affiliations.

46. In handling the Honors Program applications and related records

regarding him and others similarly situated in the above-described fashion,

defendant through its employees failed to maintain in their records "only such

information about [them] as [was] relevant and necessary to accomplish a [lawful]

purpose of the agency."

47. In handling the Honors Program applications and related records

regarding him and others similarly situated in the above-described fashion,

defendant through its employees violated their rights under Privacy Act subsection

(e)(1), affecting them adversely, and it did so with intentional or willful conduct,

including conduct constituting more than gross negligence.

### Count Five:  Violations of Privacy Act Subsection (e)(2)

48.  Plaintiff hereby re-alleges all allegations in all above paragraphs.

49.  Subsection (e)(2) of the Privacy Act provides that:

> Each agency that maintains a system of records shall . . . (2) collect information to the greatest extent practicable directly from the subject individual when the information may result in adverse determinations about an individual's rights, benefits, and privileges under Federal programs.

50.  Defendant maintained records about plaintiff in connection with its determination of the result of his 2006 Honors Program application, records which were part of a system of records within the meaning of the Privacy Act.

51.  According to Defendant's Report, such records included "printouts of [Internet] search results" that were created by Deputy Associate Attorney General Esther S. McDonald -- who "conducted Internet searches on the candidates using Google and MySpace" and "searched for organizations to which candidates belonged" -- as well as her written "comments on the applications throughout the process concerning the liberal affiliations of candidates she rejected," including "memberships" that a "candidate's application did not mention."  Defendant's Report at 76-83; *see also id.* at 92-96.  Such records pertaining to political

16

affiliations were maintained also by Chief of Staff to the Deputy Attorney General Michael J. Elston. *See id.* at 79-83, 92-96.

52. Records maintained by defendant as part of plaintiff's 2006 Honors Program application were required by law to not unnecessarily include (i.e., beyond that which was submitted by the applicant himself or herself) records reflecting an individual's political or ideological affiliations.

53. In handling the Honors Program applications and related records regarding him and others similarly situated in the above-described fashion, defendant through its employees failed to collect information directly from him and them -- i.e., to go no further than collecting information from them, as opposed to through improper Internet search means, given that such improperly collected Internet information was in fact collected for the express purpose of triggering adverse administrative determinations and decisions, with their consequent adverse effects.

54. In handling the Honors Program applications and related records regarding him and others similarly situated in the above-described fashion, defendant through its employees violated their rights under Privacy Act subsection (e)(2), affecting them adversely, and it did so with intentional or willful conduct,

17

including conduct constituting more than gross negligence.

### Count Six: Violations of Privacy Act Subsection (e)(6)

55. Plaintiff hereby re-alleges all allegations in all above paragraphs.

56. Subsection (e)(6) of the Privacy Act provides that:

> Each agency that maintains a system of records shall . . . (6) prior to disseminating any record about an individual to any person other than an agency, unless the dissemination is made pursuant to subsection (b)(2) of this section, make reasonable efforts to assure that such records are accurate, complete, timely, and relevant for agency purposes.

57. Defendant maintained records about plaintiff in connection with its determination of the result of his 2006 Honors Program application, records which were part of a system of records within the meaning of the Privacy Act.

58. According to Defendant's Report, such records included "printouts of [Internet] search results" that were created by Deputy Associate Attorney General Esther S. McDonald -- who "conducted Internet searches on the candidates using Google and MySpace" and "searched for organizations to which candidates belonged" -- as well as her written "comments on the applications throughout the process concerning the liberal affiliations of candidates she rejected," including "memberships" that a "candidate's application did not mention." Defendant's

18

Report at 76-83; *see also id.* at 92-96. Such records pertaining to political affiliations were maintained also by Chief of Staff to the Deputy Attorney General Michael J. Elston. *See id.* at 79-83, 92-96.

59. Records maintained by defendant as part of plaintiff's 2006 Honors Program application were required by law to not unnecessarily include (i.e., beyond that which was submitted by the applicant himself or herself) records reflecting an individual's political or ideological affiliations.

60. In handling the Honors Program applications and related records regarding him and others similarly situated in the above-described fashion, defendant through its employees failed to meet their obligations to maintain their records with sufficient propriety, care, and safeguards to ensure that they were properly relevant for all reasonably foreseeable agency purposes.

61. As well, the manner in which Chief of Staff Elston maintained such records, and engaged in lax supervision over them and employees who had access to them, was itself inappropriate. *See* Report at 68-69, 79-91, 94-96.

62. In handling the Honors Program applications and related records regarding him and others similarly situated in the above-described fashion, defendant through its employees violated their rights under Privacy Act subsection

19

(e)(6), affecting them adversely, and it did so with intentional or willful conduct, including conduct constituting more than gross negligence.

### Count Seven:  Violations of Privacy Act Subsection (e)(9)

63.  Plaintiff hereby re-alleges all allegations in all above paragraphs.

64.  Subsection (e)(9) of the Privacy Act provides that:

> Each agency that maintains a system of records shall . . . (9) establish rules of conduct for persons involved in the design, development, operation, or maintenance of any system of records, or in maintaining any record, and instruct each such person with respect to such rules and the requirements of this section, including any other rules and procedures adopted pursuant to this section and the penalties for noncompliance.

65.  Defendant maintained records about plaintiff in connection with its determination of the result of his 2006 Honors Program application, records which were part of a system of records within the meaning of the Privacy Act.

66.  According to Defendant's Report, such records included "printouts of [Internet] search results" that were created by Deputy Associate Attorney General Esther S. McDonald -- who "conducted Internet searches on the candidates using Google and MySpace" and "searched for organizations to which candidates belonged" -- as well as her written "comments on the applications throughout the process concerning the liberal affiliations of candidates she rejected," including

"memberships" that a "candidate's application did not mention." Defendant's Report at 76-83; *see also id.* at 92-96. Such records pertaining to political affiliations were maintained also by Chief of Staff to the Deputy Attorney General Michael J. Elston. *See id.* at 79-83, 92-96.

67. Records maintained by defendant as part of plaintiff's 2006 Honors Program application were required by law to not unnecessarily include (i.e., beyond that which was submitted by the applicant himself or herself) records reflecting an individual's political or ideological affiliations.

68. The actions of defendant's employees Elston and McDonald (and of their putative supervisors as well), as described above, manifestly were undertaken in ignorance of and/or in total disregard for their specific Privacy Act-related legal obligations and responsibilities for such a personnel process, inter alia, high-level or otherwise, as is stated in the findings and conclusions of defendant's own Report.

69. As well, the manner in which Chief of Staff Elston maintained such records, and engaged in lax supervision over them and employees who had access to them, was itself inappropriate. *See* Report at 68-69, 79-91, 94-96.

70. On information and belief, and as is evidenced in Defendant's Report,

defendant took no meaningful action to comply with its Privacy Act subsection
(e)(9) obligations for its instant records-maintenance and decisionmaking
processes. By all accounts, it simply ignored the fact that the Privacy Act is "an
'omnibus code of fair information practices,'" *Freedom of Information Act Guide*
*& Privacy Act Overview* (May 2004), at 889, one that, as addressed in an
overarching way through subsection (e)(9), explicitly requires relevant
"instruct[ion]" to employees such as Mr. Elston and Ms. McDonald under
circumstances such as those involved here. On information and belief, and as is
evidenced in Defendant's Report, such deficiencies continue to date within this
subject-matter area as to both pre-2007 and post-2006 records.

71. In handling its Honors Program applications and related records
regarding plaintiff and others similarly situated, and permitting employees who
were not properly instructed on their legal obligations to not undertake such
responsibilities and actions without adequate training, instruction, and/or
guidance, defendant made possible -- and evidently in context even made
inevitable -- the working environment in which such a wide range of Privacy Act
rights of plaintiff and others similarly situated were grossly violated.

72. In handling plaintiff's Honors Program application and related records

22

regarding him and others similarly situated in the above-described fashion,

defendant through its employees violated their rights under Privacy Act subsection

(e)(9), affecting them adversely, and it did so with intentional or willful conduct,

including conduct constituting more than gross negligence.

### Count Eight:  Violations of the Civil Service Reform Act

73.  Plaintiff hereby re-alleges all allegations in all above paragraphs.

74.  Plaintiff is not a federal employee limited as such in his ability to seek

redress for defendant's gross violations of the fairness principles and requirements

contained in the Civil Service Reform Act ("CSRA") in his case and those of

others similarly situated.  In fact, the actions of defendant complained of above

actually resulted in that circumstance.

75.  By creating and maintaining records about plaintiff as described above

and evidenced in Defendant's Report, defendant wrongfully injected politics,

political affiliation, and ideological affiliation into its Honors Program

decisionmaking as to him and to others similarly situated, harming him and them

in specific violation of the CSRA standards and requirements set forth at 5 U.S.C.

§§ 2301(b), 2301(b)(1)(E), 2301(b)(2), and 2302(b)(12); at 42 C.F.R. § 1(a); and

in defendant's own statements of policy regarding such career employee hiring

actions. *See* Defendant's Report at 6-8; *see also, e.g., id.* at 93-94 & n.59.

**Count Nine:  Violations of the First Amendment to the Constitution**

76.  Plaintiff hereby re-alleges all allegations in all above paragraphs.

77.  Defendant wrongfully created and maintained records regarding the exercise of plaintiff's rights under the First Amendment (and those of others similarly situated), including the freedoms of speech, political/ideological expression, and association, as described in Defendant's Report, and in so doing wrongfully abridged, and effectively penalized him and them for, the exercise of such rights.

78.  Such wrongful conduct by defendant warrants specific redress lest it recur.

**Count Ten:  Violations of the Fourteenth Amendment to the Constitution**

79.  Plaintiff hereby re-alleges all allegations in all above paragraphs.

80.  Defendant wrongfully made determinations and decisions regarding plaintiff and others similarly situated in a manner that admittedly not only were in contravention of merit-based principles but also were impermissibly based on criteria of political and ideological affiliation that deprived them of their rights to equal protection of the laws.

81. Such wrongful conduct by defendant warrants specific redress lest it recur.

## Count Eleven:  Violations of the Federal Records Act

82. Plaintiff hereby re-alleges all allegations in all above paragraphs.

83. The Federal Records Act regulates records maintenance, which is at the heart of this civil action, but also the processes of records disposition as well.

84. As is now evidenced in Defendant's Report, defendant has failed to meet both its records-maintenance responsibilities and it records-disposition responsibilities as to some, if not all, of the records pertaining to its administrative decisionmaking regarding plaintiff and others similarly situated. *See, e.g.*, Report at 68-69.

85. On information and belief, such deficiencies continue to exist as to records of defendant's Honors Program and Summer Law Intern Program, both past and present, and are continuing, which warrants judicial review under the Administrative Procedure Act and appropriate injunctive relief.

## Count Twelve:  Violations of Other Law(s) as Found in Defendant's Report

86. Plaintiff hereby re-alleges all allegations in all above paragraphs.

87. By its own undifferentiated admission, defendant's conduct regarding

25

plaintiff and others similarly situated "violated federal law." Defendant's Report at 96, 99.

88. Such violations, to the extent that they extend beyond the legal claims stated above, warrant redress in this civil action as well.

### Class Action Allegations

89. In accordance with Rule 23.1(a) of the Local Rules of this Court, plaintiff hereby identifies the following portions of Rule 23 of the Federal Rules of Civil Procedure as those under which this civil action is claimed to be properly maintainable as a class action: Rules 23(b)(1) and 23(b)(3).

90. As to the allegations appropriate to the claim that this civil action is properly maintainable as a class action, plaintiff specifically re-alleges and incorporates all of the allegations of all of the above paragraphs as uniformly constituting such.

91. As to the approximate size and definition of the alleged class, plaintiff hereby identifies them as consisting of the numbers and types of persons who have been referenced by defendant (i.e., as known to defendant in the first instance rather than known to plaintiff) in the descriptions that are contained in Defendant's Report.

92. As to the basis upon which plaintiff claims to be an adequate representative of the class (including possible subclasses), plaintiff avers that as is stated in paragraphs 5-9 above, he is by his own circumstances situated similarly to the putative class members and is by virtue of his close familiarity with the law and facts applicable to his claims, and the common claims of putative class members, uniquely qualified to proceed as their representative in the vindication of their rights and the pursuit of appropriate redress for defendant's violations of same.

93. As to the alleged questions of law and fact claimed to be common to the class, plaintiff avers that they are as stated in the allegations and claims of legal violations specifically made above, including but not limited to the proper administrative compliance with the multiple identified requirements of the Privacy Act of 1974 and the Federal Records Act.

94. As to the allegations supporting the findings required by Rule 23(b)(3) of the Federal Rules of Civil Procedure, plaintiff specifically re-alleges and incorporates all of the allegations of all of the above paragraphs as uniformly constituting such, and he further specifically avers the facts of those allegations as both individually and as a whole supporting findings in this case that common

questions of law and fact predominate and that the maintenance of this civil action as a class action is superior to any other available method of fairly and efficiently adjudicating the matters have been placed in controversy by the findings and conclusions set out in Defendant's Report.

## Prayer for Relief

WHEREFORE, plaintiff prays for relief as follows:

95. Plaintiff seeks damages in the amount of one-hundred thousand dollars ($100,000) for himself and for each member of the class as established and certified in this action.

96. Plaintiff seeks a declaratory judgment that defendant has violated and continues to violate requirements of the Federal Records Act and the Privacy Act of 1974.

97. Plaintiff seeks, on behalf of past, present, and future aggrieved persons, an order enjoining defendant from continuing to violate its legal obligations under the Federal Records Act and the Privacy Act of 1974.

98. Plaintiff seeks an order awarding him and his fellow class members the costs and reasonable attorney fees involved in bringing this action.

99. Plaintiff seeks, on his own behalf as well as on behalf of all other class

28

members, such other relief that the Court may deem just and proper.

By Plaintiff's Attorney:

Dated:  June 30, 2008

DANIEL J. METCALFE
D.C. Bar # 244293
4910 Mass. Ave., N.W., Rm. 125
Washington, D.C.  20016
(202) 274-4134

29

F
08-1134
JDB

## I (a) PLAINTIFFS

Sean M. Gerlich

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF 99999
(EXCEPT IN U.S. PLAINTIFF CASES)

## DEFENDANTS

United States Department of Justice

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Daniel J. Metcalfe (202) 274-4134
4910 Mass. Ave. N.W., Rm. 125
Washington, D.C. 20016

ATTO

Case: 1:08-cv-01134
Assigned To : Bates, John D.
Assign. Date : 6/30/2008
Description: FOIA/Privacy Act

## II. BASIS OF JURISDICTION

(PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff

☐ 3 Federal Question
(U.S. Government Not a Party)

☒ 2 U.S. Government Defendant

☐ 4 Diversity
(Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT

(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

☐ **A. Antitrust**

☐ 410 Antitrust

☐ **B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

☐ **C. Administrative Agency Review**

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

☐ **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

☐ **E. General Civil (Other)** OR ☐ **F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Immigration**
☐ 462 Naturalization Application
☐ 463 Habeas Corpus- Alien Detainee
☐ 465 Other Immigration Actions

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant)

☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.

☐ 460 Deportation
☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not Administrative Agency Review or Privacy Act)

③

| □ G. *Habeas Corpus/ 2255* | □ H. *Employment Discrimination* | ☒ I. *FOIA/PRIVACY ACT* | □ J. *Student Loan* |
|---|---|---|---|
| □ 530 Habeas Corpus-General<br>□ 510 Motion/Vacate Sentence | □ 442 Civil Rights-Employment<br>(criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | □ 895 Freedom of Information Act<br>☒ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | □ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| □ K. *Labor/ERISA (non-employment)* | □ L. *Other Civil Rights (non-employment)* | □ M. *Contract* | □ N. *Three-Judge Court* |
|---|---|---|---|
| □ 710 Fair Labor Standards Act<br>□ 720 Labor/Mgmt. Relations<br>□ 730 Labor/Mgmt. Reporting & Disclosure Act<br>□ 740 Labor Railway Act<br>□ 790 Other Labor Litigation<br>□ 791 Empl. Ret. Inc. Security Act | □ 441 Voting (if not Voting Rights Act)<br>□ 443 Housing/Accommodations<br>□ 444 Welfare<br>□ 440 Other Civil Rights<br>□ 445 American w/Disabilities-Employment<br>□ 446 Americans w/Disabilities-Other | □ 110 Insurance<br>□ 120 Marine<br>□ 130 Miller Act<br>□ 140 Negotiable Instrument<br>□ 150 Recovery of Overpayment & Enforcement of Judgment<br>□ 153 Recovery of Overpayment of Veteran's Benefits<br>□ 160 Stockholder's Suits<br>□ 190 Other Contracts<br>□ 195 Contract Product Liability<br>□ 196 Franchise | □ 441 Civil Rights-Voting (if Voting Rights Act) |

☒ **ORIGIN**
☒ 1 Original Proceeding   □ 2 Removed from State Court   □ 3 Remanded from Appellate Court   □ 4 Reinstated or Reopened   □ 5 Transferred from another district (specify)   □ Multi district Litigation   □ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

5 U.S.C. § 552a   Suit for damages and injunctive relief for (inaccurate) record maintenance and administrative actions

**VII. REQUESTED IN COMPLAINT**   CHECK IF THIS IS A CLASS ☒ ACTION UNDER F.R.C.P. 23   DEMAND $ _____   Check YES only if demanded in complaint   JURY DEMAND: □ YES ☒ NO

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   □ YES ☒ NO   If yes, please complete related case form.

DATE  6/30/08   SIGNATURE OF ATTORNEY OF RECORD  _____

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

\forms\js-44.wpd