...

...

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

**SEAN M. GERLICH, et al.,**

    **Plaintiffs,**

       v.                                  Civil Action No. 08-1134 (JDB)

**UNITED STATES DEPARTMENT**
   **OF JUSTICE, et al.,**

    **Defendants.**

_____

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION**

**Preliminary Statement**

This is a civil suit that has been filed as a putative class action involving hundreds of young attorneys who were treated by the United States Department of Justice and some of its top officials in a manner that was at once both stunningly corrupt and, in the recent words of former Attorney General Alberto R. Gonzales, just one of "the little negatives that occurred."[1]

---

[1] It seems increasingly clear that defendant Gonzales has decided that the time is now right for him to attempt to somehow vindicate his Justice Department tenure in the eyes of the general public through "news" creation, as indicated on a Web site established for this purpose entitled "Gonzales.Facts.com," the main page of which begins as follows: "***NewsAlert*** Watch Interviews with Judge

The suit was commenced by filing of the Complaint on June 30, 2008, with the distinct class action allegations that are required by rule,[2] and after successive amendments soon thereafter it is now proceeding on the basis of the Second Amended Complaint, which was filed by Order of the Court on November 13, 2008.  It, too, contains the necessary class action allegations, though more broadly stated against a total of six defendants under what for convenience can be referred

---

Gonzales" (*available at* http://www.gonzalesfacts.com/home.html, last visited Feb. 9, 2009).  (This Web site actually links to the recent National Public Radio interview in which defendant Gonzales spoke impliedly of being "engaged" in matters of politicized hiring.  *See* Plaintiffs' Consolidated Memorandum of Points and Authorities in Opposition to Defendant Elston's Motion to Dismiss and in Further Support of Plaintiffs' Cross-Motion for Scheduling Conference, filed Feb. 2, 2009 (Plaintiffs' Cross-Motion Reply Memorandum), at 6 n.6.  It also contains the following:  "To contribute to the Alberto R. Gonzales Legal Expense Trust, please go to www.gonzalesdefense.com.")

Notably, the statement by defendant Gonzales that is quoted in the text was part of a Cable News Network interview with CNN anchor Campbell Brown conducted on February 3, 2009, and was uttered in the context of "political bias and ideology" (Ms. Brown's words) in Justice Department "hiring" decisions during his tenure.  Said defendant Gonzales, after first touting (with no evident sense of irony) his record of "prosecution of public corruption" elsewhere: "[C]learly mistakes were made . . . there were political considerations taken with respect to the hiring decisions made by some of the staff."  The full video of this broadcast can be viewed at this link:  http://video.aol.com/video-detail/alberto-gonzales-uncut/1765901518/?icid=VIDLRVENT07.  What is not yet "clear," to use his word, is the extent to which defendant Gonzales was "engaged."  What is clear is that while his public relations efforts doubtless have revealed more than intended in this regard, they are no substitute for a judicially enforced deposition.

to as the Privacy Act and the *Bivens* parts of the case.  *See* Second Amended Complaint, filed Nov. 13, 2008, ¶¶ 227-32.  Plaintiffs now have moved for an appropriate order certifying this case as a class action, as further required by rule,[3] but they do so with the recognition that due to the continued deficiencies attendant upon the pending dismissal motion filed by one of the defendants, the parties stand in disagreement over the exact number of class representatives in different categories of the case.[4]

For this reason, and more importantly for the clarity that it yields, plaintiffs will present the case for class certification with specific reference to particular parties, claims, and groups of putative class members who occupy different categories of those victimized by defendants' alleged wrongful actions.  At the end

---

[2] *See* Complaint, filed June 30, 2008, at ¶¶ 89-94.

[3] *See, e.g.,* plaintiffs' Motion for Preliminary Scheduling Order, filed June 30, 2008, at 2 (citing F.R.C.P. 23(c)(1)).

[4] Although this circumstance has created an element of indefiniteness currently, plaintiffs are confident that they will be able to move this basic aspect of the case toward a proper adjudication prior to the necessary resolution of the instant motion.  *See* note 12 infra; *accord* Local Civil Rule 23.1(b) (providing that a court "may order that a ruling [on class certification] be postponed pending discovery"); *see also* Order of July 14, 2008 (contemplating "an appropriate scheduling order once the defendant has responded to the complaint").

of the day, plaintiffs respectfully suggest, it should be clear that the full facts of this extraordinary case warrant its certification as a class action beyond any reasonable challenge.[5]

## Argument

The starting point for consideration of class certification of this case ought to be a full appreciation of the total number of Attorney General's Honors

---

[5] Plaintiffs have vociferously argued elsewhere that it is most appropriate for the Court to have a complete record before it prior to exercising its judgment as to whether to recognize *Bivens* jurisdiction on the extraordinary facts of this case. *See, e.g.*, Plaintiffs' Consolidated Memorandum of Points and Authorities in Opposition to Defendants' Motions to Dismiss and in Support of Plaintiffs' Cross-Motion for Scheduling Conference, filed Jan. 9, 2009 (Plaintiff's Consolidated Memorandum), at 4-5 n.8. (Indeed, the propriety of this has only been reinforced with the passage of time since the filing of this suit, as it now seems that almost weekly defendant Gonzales makes a public statement that opens the door further toward that – *see* note 1, supra, and accompanying text – and even defendant Department of Justice has now, for the first time, officially suggested that defendant Goodling was directly involved in the "internet printouts" that are central to this case. Defendant Department of Justice's Reply in Support of Motion to Dismiss Second Amended Complaint, filed Jan. 23, 2009 (Defendant Department of Justice's Reply Memorandum), at 17 (speaking of defendant Goodling's record-retention practices as if applicable).)

Defendants for their part might well argue likewise here, particularly insofar as the discovery necessary to create such record completeness could conceivably remove certain aspects (e.g., pertaining to the year 2002) from the case. *See, e.g.*, Plaintiffs' Cross-Motion Reply Memorandum at 18. Plaintiffs' position on this is that the Court could appropriately proceed to the matter of class certification at this point, with full certification as is requested here, but that they are entitled to first support their full certification claims on the basis of appropriate discovery if

Program and Summer Law Intern Program applicants involved. Plaintiffs have stated that number as exceeding 800, based upon the specifications contained in the Department of Justice's own Inspector General's report entitled, "An Investigation of Allegations of Politicized Hiring in the Department of Justice Honors Program and Summer Law Intern Program" (Defendants' June 24 Report or Report I). Second Amended Complaint, ¶ 229. The exact total number appears to be known only to defendant Department of Justice and should be determined with precision once that party is in a position to reliably do so.

Of that total, however, the putative class members readily can be seen as falling into four subgroups, according to both year and program type. It is no secret that there are only two of each involved here, as there is no basis upon which to contend otherwise. Thus, there is (A) a group of Honors Program applicants found to have been "deselected" in 2006; (B) a group of such SLIP applicants in that same year; (C) a group of Honors Program applicants identified as "deselected" in 2002; and (D) a group of such SLIP applicants in that same year.

As to "Group A," the Inspector General's June 24 report identifies 170 such applicants. *See, e.g.*, Report I at 38 (reaching that number through the subtraction

---

necessary otherwise. *Accord id*. at 11 & p. 13.

of 16 from 186).[6]  As to "Group B," the Inspector General's June 24 report identifies 189 such applicants.  *See, e.g.*, Report I at 53 (reaching that number through the subtraction of 13 from 202).  As to "Group C," the Inspector General's June 24 report identifies 287 such applicants.  *See, e.g.*, Report I at 20 (reaching that number through the subtraction of 20 from 307).  And as to "Group D," the Inspector General's June 24 report identifies 185 such applicants.  *See, e.g.*, Report I at 18.  This amounts to a total of 831 applicants who have every reason to conclude that they were (to put it mildly) wrongfully treated by defendant Department of Justice through its employees in one of those programs in one of those years[7] and must look to the Court in this lawsuit for relief.[8]

---

[6] It should be noted that since the filing of this lawsuit, defendant Department of Justice (as opposed to its Inspector General) has taken action as to this first category of putative class members that appears to be inconsistent with, inter alia, this number.  This will be addressed in more conclusive detail in connection with plaintiffs' impending motion to strike defendant Department of Justice's "corrective" declaration, so suffice to note here, just as a numerical point, that it appears there might be some discrepancy in the 2006 Honors Program subclass as between the numbers 170 and 167.

[7] Plaintiffs acknowledge that due to the "career ladder" relation between the two programs, the possibility of intervening judicial clerkships, and the four-year span involved, it is theoretically possible that a SLIP applicant in 2002 could also be an Honors Program applicant in 2006, thus reducing the total number of actual individuals who could participate in a class.  Given that judicial clerkships rarely consume a total of more than two years of an attorney's career development, however, that possibility should be regarded here as negligible.

To this breakdown -- or aggregation, looked at another way – must be added the basic fact (although it appears to have eluded defendant Department of Justice within the formulaic structure of its briefs) that the Privacy Act part of this case pertains to the two programs for the year 2006 only.  In other words, while it might well be that the particular Privacy Act-violative conduct found by the Inspector General to have been employed in 2006 also was employed in the year 2002 – and thus was likewise contributory to the wrongful results found to have been achieved in that year – there is no evidence of that.  And plaintiffs certainly have not claimed that there is such or that there is expected to be.[9]

---

[8] At this point, plaintiffs see no risk of overstatement in asserting to the Court that there certainly appears to be no reasonable prospect of appropriate redress, including adequate deterrence of future such unlawful conduct, through any avenue other than this lawsuit.  Certainly it now is clear that nothing of the kind can be expected from the Obama Administration; quite the contrary.  *See, e.g.*, Plaintiffs' Cross-Motion Reply Memorandum at 1-2 n.1.  And as is pointed out below, for example, defendants' collective suggestion that the plaintiffs and putative plaintiffs before the Court here ought simply follow an Office of Special Counsel process toward redress is just plain ludicrous -- especially as to the 2002 applicants and the SLIP applicants for the 2006 year.  *See* note 20 infra.  Indeed, even if defendant Department of Justice were to produce one or more applicants who accepted its highly questionable "offer" this past fall, that would prove nothing in the full context of this case.

[9] One caveat is necessary here:  Because plaintiffs intend to depose both defendant Louis G. DeFalaise and defendant Gonzales in this case, each of whom held federal office in 2002 and was in a position to know of such a thing (i.e., Privacy Act-violative involvement) if it did in fact occur, it is always possible that upon

So this means that, in the structural parlance adopted above, appropriate class certification as to plaintiffs' Privacy Act claims[10] (1) is as to the total of 359 putative class members in Groups A and B combined, (2) is as to defendant Department of Justice only,[11] and (3) involves plaintiffs Sean M. Gerlich,

---

the appropriate completion of this case's record there could be evidence on this point for which conformity of the pleadings would be warranted. *Accord* F.R.C.P. 15(b); *cf.* Second Amended Complaint, ¶ 236 (claiming as-yet-indeterminate money damages as against defendants Gonzales and DeFalaise for the year 2002); *accord id.* at ¶ 66 (citing Report I at 98 as to what is "as yet unknown"); Plaintiffs' Cross-Motion Reply Memorandum, at 6-7 n.7.  For present purposes, however, and to best facilitate the efficient certification of a class, plaintiffs do no more than identify this as a mere possibility here.

[10] This includes this suit's claims for declaratory and injunctive relief as to the Privacy Act, as well as with respect to the Federal Records Act, though the interests involved in those claims are broadly held.  Beyond that, all plaintiffs seek declaratory judgment and injunctive relief as to the grossly unlawful conduct found to have taken place during both 2002 and 2006.  *See* Second Amended Complaint, ¶¶ 238, 240.

[11] Notwithstanding the lengths to which some of the individual defendants have gone to brief the "issue" as if it really is one – *see, e.g.*, Memorandum of Points and Authorities in Support of Defendant Michael J. Elston's Motion to Dismiss Plaintiffs' Second Amended Complaint, filed Dec. 2, 2008, at 17-19 – there simply is no individual civil liability under the Privacy Act for federal employees.  While the defendants (speaking collectively) do recognize this when attempting to argue that the Privacy Act (atop the CSRA) "precludes" *Bivens* jurisdiction in this case, just reflexively following this Court's ruling in *Wilson v. Libby*, they fatally fail to recognize that the wrongful conduct involved there actually *was* the Privacy Act-violative conduct, whereas here it was only facilitated by Privacy Act-violative conduct.  In fact, the nature and extent of the Inspector General's findings for the year 2002 in this case serve to make this very point.  *See* note 7 supra.

Christopher D. Coleman, James N. Saul, Matthew J. Faiella, and Daniel J. Herber as class representatives.[12]

As to the *Bivens* claims, the above likewise is so, except of course for the fact that the Department of Justice is not the defendant involved;[13] rather, before the Court in this part of the case are the five individual defendants. And in addition to the 359 putative class members referenced above (i.e., for the year 2006), there are a total of another 472 in Groups C and D combined, to which the

---

[12] To be sure, defendant Department of Justice has taken the position (variable though it has been) that not all of these "2006 plaintiffs" are proper participants in this lawsuit to begin with. This position was raised first in its dismissal motion, in based upon an incompetent evidentiary foundation, which was compounded by continued evidentiary reliance in its most recent filings. *See, e.g.*, Defendant Department of Justice's Reply Memorandum at 3 (inexplicably still placing primary reliance on *first* defective declaration). As plaintiffs more recently represented to the Court, moreover, defendant Department of Justice's attempts to rectify its initial position in this regard are themselves so deficient as to be subject to a motion to strike. *See* Plaintiffs' Cross-Motion Reply Memorandum, at 2 n.1. Defendant Department of Justice can expect that motion to be filed long before its time to oppose the instant motion.

[13] It bears reiteration here that when defendant Department of Justice (with a belatedness bespeaking diffidence) finally exercised its role of submitting a "statement of interest" on the individual defendants' behalves here, it uttered *not a word* in favor of the Court according qualified immunity to any of the defendants. *See* Plaintiffs' Consolidated Memorandum at 43 n.65 (observing that this "speaks volumes" on the qualified immunity question). Yet even with that, and with a current Justice Department official now one of the defendants in the case, nothing was said by defendant Department of Justice then in reply either. *See* Defendant Department of Justice's Reply Memorandum, passim.

*Bivens* claims (as to defendants Gonzales and DeFalaise) apply.  *See* Second Amended Complaint at ¶ 236; *see also, e.g., id*. at ¶¶ 201, 204, 207, 209, 217; *accord id.* at ¶ 66 (citing Report I at 98 on *Bivens* significance of what is "as yet unknown").  And of course the class representatives here also include plaintiffs James K. Gooch, Benjamin M. Meier, and Ryan S. Spiegel.[14]

Thus, in its totality this case involves four distinct subclasses, two types of defendants, two "year-based" groups of plaintiffs, and two primary types of claims (declaratory and injunctive relief claims being secondary).  Whether certified as one class of 831 individuals, two subclasses either of 457 and 374 individuals (if divided along Honors Program/SLIP lines) or of 359 and 472 individuals (if divided by year), or four subclasses of 170, 189, 287, and 185 individuals, respectively, it should be clear that the result is essentially the same.[15]

It likewise should be clear that certification of this case as a class action suit against the individual and institutional defendants is entirely warranted.  This is not a case in which the putative plaintiffs are situated so as to have widely

---

[14] *See also* note 10 supra as to additional non-*Bivens* claims.

[15] Plaintiffs certainly do not overlook the fact that the numbers of persons found by the Inspector General to fall within these subcategories – and thus the 831 total, of course – include themselves as well.  So the actual total of putative class members seen as involved must be reduced accordingly.

divergent interests in relation to the claims that are made; to the contrary, they are very much of a piece. And of course a trial court is vested with broad discretion to certify class actions under the federal rules. *See generally Eubanks v. Billington*, 110 F.3d 87 (D.C. Cir. 1997).

Indeed, the provisions of Rule 23 of the Federal Rules of Civil Procedure were well designed for a case such as this. As plaintiffs already have specified in compliance with Local Civil Rule 23.1(a), the claims that are stated by the eight plaintiffs in this case, in conjunction with the findings of defendant Department of Justice's own Inspector General, more than amply warrant the Court's exercise of its class-certification authority under Rule 23. *See* Second Amended Complaint, ¶¶ 227-32.

All of the requisite elements for this are present here. First, the putative members of the class as a whole, or even if divided into separate subclasses, are so numerous as to make their joinder in this case impracticable. As noted above, even the smallest of the potential subclasses here consists of as many as 170 persons (with the total class numbering no fewer than 831, including the plaintiffs), which is more than adequate for the requisite numerosity. *See, e.g.*, *Newberg on Class Actions*, § 3.05 (3d ed. 1992) ("In light of prevailing precedent,

the difficulty inherent in joining as few as 40 class members should raise a presumption that joinder is impracticable").[16]

Second, there certainly can be no doubt that there are, in the words of Rule 23, "questions of law or fact common to the class." F.R.C.P. 23(a)(2). If nothing else, the briefing that already has taken place in this case demonstrates that. *Accord Amchem Prods. v. Windsor*, 521 U.S. 591, 615 (1997). Likewise, as to "typicality," the very nature of the unique fact pattern that is presented in this case is such that it involves hundreds of career position applicants who know -- and, given the character of defendants' enterprise, in each and every case can know only -- that they were wrongly "deselected" (a term that itself sounds misleadingly

---

[16] It is of course one thing to point to a sufficient number of putative plaintiffs here in the context of establishing "numerosity" for purposes of class certification, but quite another to envision the spawning of so many like plaintiffs in future *Bivens* actions as to counsel against recognizing such jurisdiction as a more substantive matter. Nevertheless, we have defendant Gonzales's preposterous, last-ditch attempt to persuade the Court that "[r]ecognition of a *Bivens* action in this context would raise a tide of suits," just as the Supreme Court feared in *Wilkie v. Robbins*. Reply Memorandum in Support of Defendant Alberto R. Gonzales's Motion to Dismiss, filed Jan. 23, 2009, at 5. That of course is the whole point: Defendant Gonzales is just very wrong about that – it *is* possible to achieve necessary *Bivens* deterrence without opening *Bivens* floodgates, and this case's rare fact pattern is just the one to prove that. *Cf. Pearson v. Callahan*, 555 U.S. ___, slip op. at 17-18 (Jan. 21, 2009) (No. 07-751) (reasoning similarly toward end of affording greater trial court discretion in case-management matters).

benign) in favor of those deemed to be "good Americans,"[17] who thus went on to obtain prestigious, career-making Justice Department positions in their stead.[18]

Lastly, Rule 23 for good reason further requires that any party seeking class certification be one capable of "fairly and adequately protect[ing] the interests of the class." F.R.C.P. 23(a)(4). This requirement is incorporated into the Local Civil Rules of this Court as meaning a plaintiff's ability to serve as an "adequate representative[s] of the class" on behalf of the putative class members. Local Civil Rule 23.1(a)(2)(ii). As to this, plaintiffs already have stated that

---

[17] This perversely potent label, which in context is itself *un*American, was coined of course by defendant Monica M. Goodling as documented in the follow-up Inspector General's report of July 28, 2008 that she so aggressively doth protest has "virtually nothing" to do with this case. Defendant Monica M. Goodling's Memorandum of Points and Authorities in Support of Her Motion to Dismiss the Second Amended Complaint, filed Dec. 2, 2008, at 3 (traveling even further down the ipse dixit path in contending also that "the June 24 report had virtually nothing to do with Ms. Goodling"); *see also* Second Amended Complaint, ¶¶ 91-99.

[18] It ought not have escaped anyone's notice that Attorney General Eric H. Holder, Jr., like so many other attorneys of his generation, began his legal career as a summer intern at the Justice Department (in its Criminal Division) and then as a "selectee" for the Attorney General's Honors Program upon his graduation from law school in 1976. This better than perhaps anything else illustrates the unique value of such positions. Indeed, plaintiffs challenge any of the defendants to this civil action, or their counsel, to credibly contend that Attorney General Holder would have been so readily able to rise to that position had he been an Honors Program applicant under the circumstances as they existed in 2006 rather than in the year 1975.

> they are by their own circumstances situated similarly to the putative class members and are by virtue of their very close familiarity with the law and facts applicable to their claims and the common claims of putative class members uniquely qualified to proceed as their representatives in the vindication of their rights and the pursuit of appropriate redress for defendant Department of Justice's and the individual defendants' violations of same.

Second Amended Complaint, ¶ 230; *see also id*. at ¶¶ 3-10, 17-58. Beyond this, though perhaps it could go without saying, it should by now be obvious to all defendants to this action that plaintiffs through their counsel have sufficient familiarity with the facts and law applicable to their claims as to be adequate representatives of the interests both of themselves and of others.[19] Accordingly, plaintiffs respectfully submit that all requirements for certification of a class in

---

[19] To whatever extent that it might necessary for the Court to consider the relevant experience of counsel in this regard, plaintiffs' counsel affirmatively states at this point that he has yet to prosecute a class action suit, as opposed to defending such suits on the government's behalf, but his experience as a Justice Department Trial Attorney affords ready compliance with Local Civil Rule 83.2(b). In this same vein, the Court can be assured that plaintiffs would more than adequately represent a certified class's interests in their Privacy Act claims, for instance, by not so grossly misstating the law of Privacy Act record applicability as defendant Department of Justice has done in its inapt reliance on the D.C. Circuit's *Maydak* decision. *See* Defendant Department of Justice's Reply Memorandum at 13-14 (confusing Privacy Act subsection (e)(7)'s special breadth with principle that agencies cannot evade Privacy Act restrictions merely through self-serving filing failure). Plaintiffs respectfully request that oral argument be held on this part of the case even if on no other.

this case are amply satisfied.[20]

---

[20] In stating this, plaintiffs do not overlook the fact that as a group they directly correspond to three of the four identified potential "subclasses" here, in that in the aggregate their exact individual circumstances encompass both years and both programs but do not currently include a SLIP applicant for the year 2006. Plaintiffs respectfully suggest for several reasons, however, that this should be of no moment here.  First and foremost, there is no substance of significance separating a mistreated Honors Program applicant from a SLIP one when it comes to adequate class representation, at least not on these facts.  *Cf. Hartman v. Duffy*, 19 F.3d 1459, 1471-72 (D.C. Cir. 1994).  Second, as previously has been noted, plaintiffs do have several additional prospective party plaintiffs "waiting in the wings," colloquially speaking, and they always could seek the Court's leave to file a Third Amended Complaint if any defendant were to seriously press the point. *See* Plaintiffs' Consolidated Memorandum at 15 n.17.  Third, as was also discussed above, one of the principles embodied in Rule 23 is "protect[ing] the interests of the class."  F.R.C.P. 23(a)(4).  It should be clear to all concerned by now that representation in this lawsuit is the only interest "protection" that the 2006 year SLIP applicants are going to receive from anyone, anywhere, at any time.  In fact, it should not go unnoticed that when defendant Department of Justice in September 2008 attempted some form of "remediation" for its unlawful conduct during 2006, it certainly did not include the SLIP class members within that.

   In response to this observation, of course, defendant Department of Justice readily could point out that SLIP applicants are different, in that in the fall of 2006 they were applying for "summer associate" time period slots that just could not possibly be replicated two years further down their timelines at a post-graduation juncture.  And of course in pointing this out defendant Department of Justice would be entirely correct.  But then how could it and other defendants have argued (and actually continue to argue), other than as the height of coldblooded callousness, that such plaintiffs and prospective plaintiffs in the SLIP category (even for the year 2002, no less) should simply have availed themselves of a Civil Service Reform Act (CSRA) remedy through the Office of Special Counsel (OSC) as if that were a credible position to advocate?  *See, e.g.*, Defendant Monica M. Goodling's Reply Memorandum in Further Support of Her Motion to Dismiss,

**Conclusion**

For the foregoing reasons, plaintiffs respectfully urge that their motion for certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and Rule 23.1 of the Local Civil Rules of this Court be granted. An appropriate proposed order is attached hereto.

                        Respectfully submitted,

Dated: February 9, 2009

/s/ Daniel J. Metcalfe
DANIEL J. METCALFE
D.C. Bar # 244293
4801 Massachusetts Ave., N.W.
Washington, D.C. 20016
(301) 509-2300
Counsel for Plaintiffs

---

filed Jan. 23, 2009, at 2 (speaking blithely of OSC "rectification . . . [i]n reality . . . *right now*") (emphasis in original); Defendant Michael Elston's Reply Memorandum in Support of Motion to Dismiss Plaintiffs' Second Amended Complaint, filed Jan. 23, 2009, at 7 (going so far as to suggest that a SLIP plaintiff now could be "plac[ed]" by OSC "'in the position [he or she] would have been in had the prohibited personnel practice not occurred'") (quoting statute); Defendant Department of Justice's Reply Memorandum at 19 (similarly adverting to CSRA). Pointedly put, no defendant to this civil action should now be heard to even suggest that typicality is lacking in this case in any such respect.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

**SEAN M. GERLICH, et al.,**

    **Plaintiffs,**

    v.                                    Civil Action No. 08-1134 (JDB)

**UNITED STATES DEPARTMENT**
  **OF JUSTICE, et al.,**

    **Defendants.**

_____

**PROPOSED ORDER**

Upon consideration of Plaintiffs' Motion for Class Certification, of all papers filed with respect thereto, and of the entire record herein, and it appearing to the Court that the granting of the motion, pursuant to Rule 23 of the Federal Rules of Civil Procedure and Rule 23.1 of the Local Civil Rules of this Court, would be just and proper, it is by the Court on this ____ day of _____ 2009

ORDERED that Plaintiffs' Motion for Class Certification be, and it hereby is, granted; and it is further

ORDERED that this civil action be, and it hereby is, certified as a class

action in accordance with the class contours specified in plaintiffs' motion.

_____
UNITED STATES DISTRICT JUDGE