Miscellaneous No. 10-

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

JAMES N. SAUL, ET AL.,

Plaintiffs-Petitioners,

v.

UNITED STATES DEPARTMENT OF JUSTICE,

Defendant-Respondent.

———————————————

ON PETITION FROM THE
UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

———————————————

PETITION FOR PERMISSION TO APPEAL

———————————————

This is an extraordinary case that presents an exceptional set of issues for

interlocutory review under Federal Rule of Civil Procedure 23(f).  Petitioners are

representatives of more than 350 putative class members who were victimized by

the United States Department of Justice during one of the darkest chapters in its

history.[1]  Their claims under the Privacy Act of 1974 have survived a vigorous

---

[1] Briefly stated, the Justice Department's Inspector General found that a total of
170 Honors Program applicants and 189 Summer Law Intern Program applicants
in 2006 were rejected under a blatantly politicized process of decisionmaking that
was instituted for these programs.  *See* "An Investigation of Allegations of Politi-
cized Hiring in the Department of Justice Honors Program and Summer Law In-
tern Program" (June 24, 2008), *available at* http://www.justice.gov/opr/oig-opr-

- 1 -

motion to dismiss[2] and are the subject of a class certification motion that has been extensively briefed before the District Court.

However, in two orders that contain manifestly flawed analyses and inexplicably shifting rationales, the District Court has now denied class certification due to the timing of petitioners' motion seeking it.  Specifically, it ruled that petitioners had failed to comply with Local Civil Rule 23.1(b) under its singular interpretation of that local rule and, further, had not demonstrated "excusable neglect" for that mistake under Federal Rule of Civil Procedure 6(b)(1)(B).

---

investigation-hire-slip.pdf; *see generally, e.g.*, *ABA Journal*, "Rejected Job Applicant Sues DOJ for Political Hiring" (July 2, 2008), *available at* http://www.abajournal.com/news/article/rejected_job_applicant_sues_doj_for_political_hiring; *see also* note 20, infra.  Prior to issuing the two orders under review here, the District Court referred to this as "gravely serious," as something that "must not be condoned," and, in a word, as "deplorable."  Mem. Op. of Sept. 16, 2009, at 2; Oral Argument in *Gerlich, et al. v. United States Department of Justice, et al.*, Civil No. 08-1134 (JDB), Aug. 18, 2009.

[2] In a decision issued on September 16, 2009, the District Court dismissed other claims and parties (including original named plaintiff Sean M. Gerlich) but ruled that petitioners have stated claims cognizable under both subsection (e)(5) and subsection (e)(7) of the Privacy Act of 1974, 5 U.S.C. § 552a(e)(5), (e)(7), which govern a federal agency's proper maintenance and use of personal information with strict, First Amendment-based prohibitions.  These claims trigger the Privacy Act's "liquidated damages" provision, 5 U.S.C. § 552a(g)(4)(A) (providing that "in no case shall a person entitled to recovery receive less than the sum of $1,000"), and apply likewise to the more than 350 persons who are situated similarly to petitioners.  Petitioners are James N. Saul, of 2422 Commonwealth Avenue, Madison, Wisconsin 53711; Matthew J. Faiella, 220 Wykoff Street, Brooklyn, N.Y. 11217; and Daniel J. Herber, 4053 Harriet Avenue, South Minneapolis, Minnesota 55409.

These rulings present novel and fundamentally important issues that both individually and collectively warrant the Court's review at this interlocutory stage,[3] lest they stand as manifestly erroneous barriers to the efficient adjudication of this case as well as like cases that involve class action allegations.

<u>Questions Presented</u>

This petition presents four distinct issues, each one an alternative ground for reversal of the rulings for which review is sought:

1. Whether the District Court committed manifest error in overcoming its own identified procedural barrier to its rulings?

2. Whether the District Court committed manifest error in its treatment of the Supreme Court's *Pioneer* factors for determining "excusable neglect"?

---

[3] Petitioners take the matter of seeking interlocutory review very seriously, and they attempted in this case -- by moving for reconsideration, filing more than 50 pages of detailed supporting memoranda, and twice pointedly asking the District Court to hold oral argument on that motion -- to avoid having to do so. And that motion for reconsideration was filed on May 3, 2010, within the fourteen-day time period of Rule 23(f) as amended effective December 1, 2009, just as this petition is filed within fourteen days of the entry of the Order denying reconsideration by the District Court during the evening of Friday June 4, 2010. In further compliance with Rule 23(f), petitioners respectfully submit that, inter alia, their petition presents "fundamental issue[s] of law relating to class actions." *In re Lorazepam & Clorazepate Antitrust Litig.*, 289 F.3d 98, 99-100 (D.C. Cir. 2002); *see also, e.g.*, *Lindsay v. Gov't Employees Ins. Co.*, 448 F.3d 416, 420 (D.C. Cir. 2006) (recounting Court's granting of Rule 23(f) petition on "prerequisite" basis in *In re Lindsay*).

3.  Whether Local Civil Rule 23.1(b) should be stricken as inconsistent with Rule 23 of the Federal Rules of Civil Procedure as amended in 2003?

4.  Whether the District Court's singular interpretation of the word "complaint" in Local Civil Rule 23.1(b) should be reversed and replaced with a realistic and viable one that includes an amended complaint?

I.  The District Court Committed Manifest Error in Overcoming
    Its Own Identified Procedural Barrier to Its Rulings Below

Before it proceeded to its consideration of the existence of "excusable neglect" in the circumstances of this case, the District Court first dealt with the fact that it actually had ordered petitioners to file the very renewed class certification motion that it was about to find untimely.  It noted that on September 23, 2009, having dismissed the two individual defendants who had moved to strike petitioners' class action allegations on grounds of untimeliness, it had denied their motions as moot and in that same Order had

> also denied plaintiffs' motion for class certification so that they could refile any such motion in light of the Court's resolution of the defendants' motions to dismiss.  *Id.*  Because *only* the individual defendants had *raised* the timeliness issue, that objection was no longer before the Court when it permitted plaintiffs to refile their motion.  *Hence, the Department may still* contend that plaintiffs' class certification motion is untimely.

Mem. Op. & Order of Apr. 19, 2010, at 2 n.1 (emphasis added).  Thus, the factual premise of this threshold analysis was that defendant Department of Justice had

not "raised the timeliness issue" -- and its unmistakable import was that if this were not so, it could not properly "still contend" at this stage of the case that petitioners' renewed class certification motion was untimely.[4]

This factual premise, however, was incorrect.  In fact, defendant Department of Justice was the first of the defendants to raise the timeliness issue, and it did so in no uncertain terms.  *See* Defendant Department of Justice's Reply in Support of Motion to Dismiss Second Amended Complaint, filed Jan. 23, 2009, at 2 n.2.  And when petitioners pointed this out in their reconsideration motion, neither respondent nor the District Court disputed that the former had in fact "raised the timeliness issue," contrary what the latter had explicitly premised.

Rather, the District Court without explanation just shifted on the matter, in two footnotes in which it presented no fewer than three new rationales in the place of its original legal premise.  First, it stated instead that respondent "never moved

_____

[4] Plainly, the District Court's underlying legal premise was that both the existence and the specifics of its September 23 Order stood in the way of what it then proceeded to do with the renewed class certification motion.  That Order, which was devoted entirely to the subject of class certification, had specifically denied petitioners' stayed class certification motion "without prejudice."  Order of Sept. 23, 2009, at 2.  And in it, the District Court had explained:  "Because the factual basis underlying plaintiffs' motion has changed, the motion is denied without prejudice."  *Id.*  Accordingly, it *expressly authorized* the filing of a renewed class certification motion, as follows:  "If plaintiffs again wish to move for class certification, they *may do so* pursuant to the schedule detailed in this Order."  *Id.* (emphasis added).

to strike or dismiss."  Order of June 4, 2010, at 2 n.2 ("Hence, it was free to raise

this issue in opposition to plaintiffs' renewed motion . . . .").  This approach, how-

ever, was directly contrary to its initial clear analysis of the point, something that

the District Court neither acknowledged nor made any attempt to explain.  The

District Court immediately followed this, moreover, with the following hedge:

> And, in any event, this Court's stay of the class certification briefing
> was without prejudice to any defenses defendant could have raised.

*Id.*  This, too, is inexplicably contrary to the District Court's initial analysis -- plus,

the stay orders issued by the District Court did not state this.  *See* Order of Mar. 9,

2009, at 2; Order of Feb. 18, 2009, at 1.  What *did* state this, however, was the stay

order that was issued by the District Court two years earlier in the *Howard* case.[5]

Lastly, the District Court set forth what appears to be a third substitute

rationale, without elaboration, in a separate footnote passage:

> As a result, plaintiffs' renewed motion for class certification "related
> back" to their original motion for class certification, and therefore the
> Department could raise in opposition to the renewed motion any defenses
> it had to the original motion.

---

[5] Indeed, in its initial *Howard* decision, the District Court specifically pointed out
that it had issued a stay order in *that* case that it had explicitly made "'without pre-
judice to . . . the merits of . . . any potential objection that defendants may raise (or
have raised)'" as to the plaintiffs' Local Civil Rule 23.1(b) noncompliance.  *How-
ard*, 474 F. Supp. 2d at 53 (quoting Minute Order of Sept. 1, 2006).  Petitioners
pointed this out to the District Court in their reconsideration papers, but to no
avail.

Order of June 4, 2010, at 2 n.1.  Whatever might be meant by this unadorned conclusion, petitioners submit that it is inadequate to conclusively address the serious procedural issue that the District Court so authoritatively raised.[6]  Accordingly, petitioners respectfully suggest that the District Court's inexplicable treatment of this threshold procedural issue of its own plain devise is manifestly erroneous and itself warrants reversal -- or at a minimum a remand for an unflawed analysis.

II.   The District Court Committed Manifest Error in Failing to Conduct a Proper Analysis of the *Pioneer* Factors for Determining "Excusable Neglect" in Its Rulings Below

In the first of its two rulings below, the District Court also attempted, but failed, to conduct a proper "excusable neglect" analysis under the factors established by the Supreme Court for use in doing that in *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*, 507 U.S. 380, 395 (1993).  *See, e.g.*, Mem. Op. & Order of Apr. 19, 2010, at 3 ("The Court considers 'the danger of prejudice to the [other party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the

---

[6] "Relation back" generally refers to the idea that an act done at a later time can be deemed by law to have occurred at an earlier time.  It is unclear exactly how this could overcome the threshold procedural barrier that initially had been identified by the District Court.  Certainly there is nothing in the "relation back" doctrine under Federal Rule of Civil Procedure 15 that avails here.  *See generally Krupski v. Costa Crociere S.p.A.*, No. 09-337 (U.S. June 7, 2010) (discussing "relation back" under Rule 15 in relation to mistakes, where "repose would be a windfall").

reasonable control of the movant, and whether the movant acted in good faith.'").[7]

In moving for reconsideration, petitioners demonstrated in painstaking detail that on the actual facts of this case the *Pioneer* factors overwhelmingly favor a finding of "excusable neglect" and that the District Court's analysis was both incomplete and faulty in multiple respects. *See* Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Reconsideration and Motion for Enlargement of Time Nunc Pro Tunc, filed May 3, 2010 (Petitioners' Reconsideration Memorandum), at 15-31; Reply Memorandum in Further Support of Plaintiffs' Motion for Reconsideration and Motion for Enlargement of Time Nunc Pro Tunc, filed June 1, 2010 (Petitioners' Reconsideration Reply Memorandum), at 7-16.[8]

Yet the District Court's response to this was an utter failure to apply the

---

[7] The District Court readily embraced the *Pioneer* "excusable neglect" analysis as "comfortably" applicable to what was before it, in light of what petitioners repeatedly had filed with respect to the threshold timeliness issue. Mem. Op. & Order of Apr. 19, 2010, at 3 n.3 (citing one of petitioners' filings). Petitioners also filed a motion for enlargement of time nunc pro tunc to more formally invoke these Rule 6(b)(1)(B) standards as well.

[8] No small part of this was respondent's repeated failure to establish or even claim several of the *Pioneer* factors as favoring it in support of the District Court's "excusable neglect" analysis, especially the most significant factor of "prejudice." *See* Petitioners' Reconsideration Reply Memorandum at 7-14, 16. The only *Pioneer* factor that truly favors respondent is the "control" one (or aspect of one), which would of course be so in any case of a mistake made in viewing a local rule. *See id.* at 16 n.15.

*Pioneer* factors, much less assess and weigh them correctly.  Instead, it zeroed in

on a single passage in the Supreme Court's opinion ("*Although* inadvertence,

ignorance of the rules, or mistakes construing the rules do not usually constitute

'excusable' neglect, *it is clear that 'excusable neglect' under Rule 6(b) is a some-*

*what 'elastic concept'. . .*"), quoted it in a way seemingly designed to mean *the*

*opposite of* the Court's ruling, and then flatly declared that petitioners' mistake

"renders a finding of excusable neglect inappropriate."  Order of June 4, 2010, at

3-4 (quoting, except in italicized parts necessarily supplied, 507 U.S. at 392); *see*

*also id*. (implying that conducting *Pioneer* analysis would be "deviat[ing]" from

"settled practice").  This gross error, atop the merits of petitioners' heavily favored

position under the *Pioneer* factors, cries out for immediate reversal of the District

Court's orders.

> III.  Local Civil Rule 23.1(b), at Least as Interpreted and Applied
>        by the District Court in This Case, Should Be Struck Down

As of 1966, and until its amendment in 2003, Rule 23 of the Federal Rules

of Civil Procedure addressed the matter of the timing of class certification deci-

sionmaking by requiring district court action as follows:

> *As soon as practicable* after a person sues or is sued as a class
> representative, the court must determine by order whether to certify
> the action as a class action.

Fed. R. Civ. P. 23(c)(1) (pre-amendment version) (emphasis added).

In implementation of this language, the District Court issued Local Civil Rule 23.1(b), which currently provides:

> Within 90 days after the filing of a complaint in a case sought to be maintained as a class action, unless the court in the exercise of its discretion has extended this period, the plaintiff shall move for a certification under Rule 23(c)(1), Federal Rules of Civil Procedure, that the case may be so maintained.  In ruling upon the motion, the court may allow the action to be so maintained, may deny the motion, or may order that a ruling be postponed pending discovery or other appropriate preliminary proceedings.  A defendant may move at any time to strike the class action allegations or to dismiss the complaint.

Rule 23.1(b) of the Local Civil Rules of the United States District Court for the District of Columbia (issued in original form effective Aug. 1, 1973).

In the amendments made to Rule 23 in 2003, however, the strict language "as soon as practicable" was abandoned and was replaced with the language "at an early practicable time."  This change was based on the judgment that the original language was an "exaction" and that it "neither reflect[ed] prevailing practice nor capture[d] the many valid reasons that may justify deferring the initial certification decision."  Notes of Advisory Comm. on 2003 Amendments to Rules (Subdivision (c)) (citing final report to Advisory Committee on Civil Rules prepared by Federal Judicial Center).  Notwithstanding this specific change to the underlying federal rule, however, and despite the practicalities found to underlie it, the District Court for the District of Columbia has maintained its "90-day local rule," the application

of which was the genesis of this petition.

This raises the fundamental question of whether such a local rule in and of itself is properly consistent with Rule 23 as now amended.  Indeed, this Court has already questioned exactly this, *even before* Rule 23 was amended, in a case in which the procedural posture was such that it "need[ed] not decide whether dismissal of the class allegations [for failure to comply with predecessor Local Civil Rule 1-13(b)] was reversible error."  *Gray v. Greyhound Lines, E.*, 545 F.2d 169, 173 n.11 (D.C. Cir. 1976).  It there stated:

> It is not clear that dismissal of the class allegations for failure to comply with the local time limit is consistent with Rule 23(c)(1), Fed.R.Civ.P., which may require the court to determine the merits of the claim to representative status.

*Id.* (citing, e.g., *Rodriguez v. E. Tex. Motor Freight*, 505 F.2d 40, 50 (5th Cir. 1974)).  Petitioners respectfully suggest that the District Court's "90-day local rule," which puts it among a small minority of federal district courts,[9] does stand

---

[9] As best as petitioners have determined from their basic research, fewer than a dozen of the 94 federal district courts maintain a local rule such as Local Civil Rule 23.1(b).  Of those, most are very similar to it and likewise use the word "complaint."  *See, e.g.*, W.D. Pa. Local Rule 34(c); E.D. La. Local Rule 23.1(B); N.D. Tex. Local Rule 10.2(b); N.D. Fla. Local Rule 23.1(B).  But the District Court for the District of Kansas, for one, evidently views its such rule as encompassing an amended complaint as well.  *See Murray v. Sevier*, 145 F.R.D. 563, 565, 570 n.4 (D. Kan. 1993) (reflecting view held by both plaintiffs and defendants, as well as by court upon its analysis of rule).  This likewise appears to be so in the Eastern District of Pennsylvania, where the rule has been interpreted as follows:  "We conclude that the 90-day requirement should be applied to the date of

in conflict with Rule 23 as subsequently amended, generically so,[10] and that this in
and of itself warrants interlocutory review and reversal on this petition.[11]

Most significantly, moreover, Local Civil Rule 23.1(b) raises an even more
pointed recurring question in how it was applied in this case -- specifically, in a
case in which the original complaint was amended well before the expiration of
the rule's 90-day period.  As is stated unequivocally, petitioners not atypically

---

the filing of the amended complaint . . . ."  *Seligson v. Plum Tree, Inc.*, 55 F.R.D.
259, 260-61 (E.D. Pa. 1972); *see also Weiss v. Int'l Bhd. of Elec. Workers*, 729 F.
Supp. 144, 145, 148 (D.D.C. 1990) (appearing to use date of filing of amended
complaint, rather than that of initial complaint, as benchmark against which to find
local rule noncompliance).  And two districts, evidently recognizing that the word
"complaint" can be taken to mean also an amended complaint, explicitly state
otherwise.  *See* M.D. Fla. Local Rule 4.04(b) (specifying "the filing of *the initial*
complaint in such an action") (emphasis added); C.D. Cal. Local Rule 23-3 (using
phrase "a pleading purporting to commence"); *see also* N.D. Ga. Local Rule
23.1(B) (specifying "after the complaint").

[10] Local rules of district courts can readily be struck down as invalid if they are
inconsistent with, inter alia, their underlying federal rules.  *See, e.g., Williams v.
U.S. Dist. Court*, 658 F.2d 430, 434-35 (5th Cir. 1981) (striking down local rule
governing class actions when found to be unduly frustrating policy underlying
Rule 23); *Rogers v. U.S. Steel Corp.*, 508 F.2d 152, 163-65 & n.18 (3d Cir. 1975)
(same as to local class action rule that had been based on nationwide model); *see
also, e.g., Frazier v. Heebe*, 482 U.S. 641, 646 (1987) (striking down local rule as
"unnecessary and irrational"); *cf. Larionoff v. United States*, 533 F.2d 1167, 1182
(D.C. Cir. 1976) (recounting government's position as assigning error on basis of
inconsistency with Rule 23 on question of timing), *aff'd on other grounds*, 431
U.S. 864 (1977).

[11] Petitioners specifically preserved this novel issue, as well as the further unset-
tled issue of the rule's application to amended complaints, in the proceedings in
the District Court.  *See* Petitioners' Reconsideration Memorandum at 14 n.17.

viewed this rule as applicable to successive complaints, in turn, as they were amended.[12]  They reached this view based upon, inter alia, the fact that there can be only one "complaint" extant at a time and that as of September 28 (i.e., 90 days after the case's commencement) the extant "complaint" was the amended complaint that had been filed on August 15.  *Accord, e.g.*, *Nat'l City Mortgage Co. v. Navarro*, 220 F.R.D. 102, 106 (D.D.C. 2004) (describing amended complaint as "now the operative complaint").  They saw the preliminary scheduling conference that they had sought (which they expected would be held by no later than early November) as the next logical step in the case regarding class certification as a practical matter.[13]

_____

[12] The initial complaint in this case was filed (and immediately served) on June 30, 2008.  The amended complaint was filed 46 days later, on August 15, 2008.  The second amended complaint (after being lodged with a motion for leave in late October) was ordered filed by the Court less than 90 days later, on November 12, 2008.  Likewise, the initial motion for class certification was filed less than 90 days after that, on February 9, 2009.  And the reason for all of this is simply that petitioners regarded the language of Local Civil Rule 23.1(b) as applicable to an amended complaint, in good faith but mistakenly so in the District Court's view.

[13] Mindful of Local Civil Rule 23.1(b)'s time deadline at the outset of the case, petitioners (i.e., then-plaintiff Sean M. Gerlich) ironically took the step of filing (and immediately serving) an extraordinary "motion for preliminary scheduling order" -- specifically "in anticipation of plaintiff's prospective motion for class certification" -- together with the case's initial complaint.  Motion for Preliminary Scheduling Order, filed (and served) June 30, 2008, at 1.  By this step, they sought actually to "accelerate the pace by which matters in this case [could] proceed," through the holding of a brief status conference sooner than it otherwise would

However, unbeknownst to petitioners, the District Court had issued a decision under Local Civil Rule 23.1(b), in a case presenting extreme facts, in which it had interpreted the word "complaint" in the rule to mean "the initial complaint" and not any amended complaint that replaces it. *Howard v. Gutierrez*, 474 F. Supp. 2d 41, 53-55 (D.D.C.), *reaff'd on denial of reconsideration*, 503 F. Supp. 2d 392, 394 (D.D.C. 2007).[14]   And the District Court simply applied that same narrow interpretation here, as a fixed rule, regardless of the particular factual circumstances of this case (not to mention the fact that Rule 23 had been amended to make such an interpretation even less supportable as a general rule).

---

take place.  Plaintiff's Memorandum of Points and Authorities in Support of Motion for Preliminary Scheduling Order, filed (and served) June 30, 2008, at 2, 4-5 (citing timing element of Rule 23(c)(1)(A) as support for filing such an extraordinary motion).  The District Court denied this motion, but it did so specifically "without prejudice to considering an appropriate scheduling order once the defendant has responded to the complaint."  Order of July 14, 2008 (Minute Order).

[14] As is made evident on the face of the District Court's Order of June 4, 2010, the District Court Judge in *Howard* was the same as in the instant case.   To the best of petitioners' knowledge, there are only two other instances in which a district court judge in any jurisdiction has independently come to this interpretation upon applying such a "90-day local rule" (in the Northern Districts of Florida and Texas), and the District Court relied on neither of them below.  In this jurisdiction, this interpretation was "accept[ed]" based upon *Howard*, without consequence, in a case in which a different District Court Judge found that the plaintiffs before him "were not unreasonable to think" otherwise and committed "excusable neglect" in doing so.  *Cryer v. Intersolutions, Inc.*, No. 06-2032 (EGS), slip op. at 11-16 (D.D.C. Apr. 20, 2007) (finding no prejudice in delay under *Pioneer*), *available at* https://ecf.dcd.uscourts.gov/cgi-bin/show_public_doc?2006cv2032-32; *see also*

Therefore, above and beyond the foregoing, petitioners respectfully submit that this case thus presents a novel, unsettled, and fundamentally important issue in this respect, one that foreseeably can arise in any case in which a class action complaint is amended within its first 90 days. And this issue's resolution in this case, at this stage, can render moot the matter of the District Court's manifest error in not properly evaluating the factors governing "excusable neglect," inter alia, as well as permit the more than 350 victims of the Department of Justice's deplorable past actions to have their day in court for a measure of vindication in a timely manner.

As to this issue, petitioners submit that the District Court's rigid interpreta- tion of the word "complaint" in Local Civil Rule 23.1(b) is manifestly erroneous and warrants reversal. Even if this local rule were not deemed inconsistent with Rule 23(c)(1)(A) in its amended form, it at least should be interpreted and applied as to complaints and amended complaints in a way that is consistent with it. The District Court, however, did not consider the local rule's wording in context of the current language of Rule 23, let alone the clear purpose behind its amendment in 2003. Rather, it simply declared (first on *Howard*'s extreme facts) that "the most natural reading of the rule" requires the word "complaint" to mean "initial com-

---

note 9, supra (citing *Weiss v. Int'l Bhd. of Elec. Workers* decision in D.D.C.).

plaint" only.  *Howard*, 474 F. Supp. 2d at 54; *see also* 503 F. Supp. 2d at 394.[15]

And it did so in the face of plaintiffs before it who allowed the 90-day period of

Local Civil Rule 23.1(b) to expire, *then* amended their complaint, and *then* argued

that the post-expiration date of the amended complaint should be used under the

local rule.  *See id*. at 395.[16]   This led the District Court in *Howard* to reason as

follows:

> Under plaintiffs' logic, the filing of an amended complaint would
> essentially render the local rule without its intended legal effect.  The
> purpose of Local Rule 23.1(b) *is thus best served* by calculating the
> ninety-day period from the filing of the initial class complaint.

474 F. Supp. 2d at 55 (emphasis altered from original).

This reasoning, however, was flawed.  The District Court in *Howard* did not

need to interpret the word "complaint" in Local Civil Rule 23.1(b) as it did in

order to conclude that the plaintiffs there were in noncompliance with it.  Rather,

the plaintiffs in *Howard* had long been out of compliance with the rule, and their

gambit to have the District Court rule otherwise was defective on its face.  The

---

[15] Notably, neither the District Court's subsequent opinion in *Howard* nor either of
its two orders below in this case did anything more than repeat the initial *Howard*
rationale on this point.  *See* Order of June 4, 2010, at 4; Mem. Op. & Order of Apr.
19, 2010, at 3 n.2.

[16] Indeed, as the District Court put it, the plaintiffs in *Howard* had "hoped, through
the filing of an amended complaint, to *resurrect* their ability to file a motion that
they knew was already several months out of time."  *Id*. (emphasis altered from
original).

better approach by far -- and one that would have, in the District Court's words, "best served" both the local rule and Rule 23 itself (assuming for present purposes that they are not in conflict per se) -- would have been to permit "complaint" to include an amended complaint but simply hold that once Local Civil Rule 23.1(b)'s 90-day period expires it cannot be resurrected -- by an amended complaint, or by any other means for that matter.[17]

Indeed, the facts of the instant case constitute a good example of why the District Court's local rule interpretation should not be permitted to stand. Unlike in *Howard*, this case presents no attempt to "resurrect" a time deadline through amendment of a complaint. Rather, petitioners here consistently stayed within the time period of the local rule but for the District Court's rigid interpretation of it.[18] The very basis for the District Court's conclusion of local rule expiration was its interpretation excluding amended complaints from its possible scope and meaning.

---

[17] Petitioners respectfully suggest that such an application of Local Civil Rule 23.1(b) would be entirely consistent with any policy preference that it be applied "strictly." *But see Black Panther Party v. Smith*, 661 F.2d 1243, 1279 (D.C. Cir. 1981) (setting forth the genesis of the District Court's "strictly applied" approach but necessarily basing it upon the *pre-2003 amendment* view of Rule 23 that "the status of class actions should be determined quickly"); *see also* Mem. Op. & Order of Apr. 19, 2010, at 2 (justifying "strict enforcement" through mistaken reliance upon this Court's articulation of Rule 23's language and underlying policy as of 1984).

[18] *See* notes 12 and 15, supra, and accompanying text.

What this would mean is that a class action plaintiff would have a distinctly limited ability to effect a lengthening of the existing 90-day period of Local Civil Rule 23.1(b), one bounded by the established standards of Federal Rule of Civil Procedure 15.  To be sure, the plaintiff would be able to amend the initial complaint as of right until the defendant filed an answer to it -- ordinarily, within 20 days -- yielding a local rule deadline of up to 110 days rather than 90 days in the ordinary case.  But beyond that, any further lengthening of that period would be possible only if the plaintiff were to lodge a second amended complaint (as here), which then under Rule 15(a) would require either the consent of the defendant or leave of the court for filing.  Indeed, in either of these two cases the defendant would be positioned to oppose such a second amendment (or place a condition on its consent to it) with specific regard to the local rule's filing deadline -- i.e., either the defendant or the court on its own would readily be able to prevent any further deadline lengthening if it had any timing concern whatsoever about the seeking of class certification.  In other words, the District Court's concerns about the "abusive" fact pattern before it in *Howard*, and about the potential for "abusive amendments" under Rule 15 being filed under a more realistic interpretation of the local rule, 474 F. Supp. 2d at 55, actually would amount to little or no concern at all.

On the other side of the ledger is the well-recognized fact that class action

- 18 -

cases frequently involve amended complaints and, to say the very least, are not always ready for class certification motions by the 90th day after the filing of their initial complaints. Certainly, the very amendment of Rule 23(c)(1) in 2003 stands in loud testament to that. And in cases such as the instant one, in which a government agency defendant has 30 days rather than 20 days to answer, and then as a practical matter often requests a lengthy additional enlargement of time in which to do so (as here),[19] the timing can become even more problematic. Simply put, a 90-day deadline for the filing of class action motions can all too often be utterly unrealistic -- all the more so if not at least tied to the timing of a complaint as amended.

Petitioners therefore respectfully submit that it in no way serves the policy of Rule 23, or any sound case-management policy, for a judicial district to have a "90-day local rule" deadline for class certification motions *and* apply that rule to the exclusion of "complaints" that are amended complaints. Accordingly, they urge the Court to grant review of this vital issue even if no other, and to reverse the District Court's flawed interpretation of Local Civil Rule 23.1(b) in favor of the realistic and appropriate one that they advocate above. *Accord, e.g.*, *McKinney*

---

[19] This case is a good example of this. Defendant Department of Justice below obtained a total of 97 additional days in which to file a responsive pleading due to its own circumstances and the complexity of the case.

*v. Dole*, 765 F.2d 1129, 1135 n.12 (D.C. Cir. 1985) (illustrating importance of interpreting local rules realistically, rather than "literally," so as not to unduly constrain underlying policies of federal rules upon which they are based).

Conclusion

For the foregoing reasons, petitioners respectfully urge the Court to grant permission to appeal, reverse the District Court's Orders of April 19 and June 4, 2010 (which are attached), and remand the case so that petitioners' motion for class certification can be adjudicated on its merits.[20]

Respectfully submitted,

Dated:  June 18, 2010

DANIEL J. METCALFE
*Counsel for Plaintiffs-Petitioners*
*4801 Massachusetts Ave., N.W.*
*Washington, D.C.  20016*
*(301) 509-2300*
*djm.consulting@verizon.net*

---

[20] Integral to petitioners' class certification motion -- and to the extraordinary nature of this case and its systemically corrupt official wrongdoing -- is the undisputed fact that sometime in late 2006, respondent United States Department of Justice actually burned all of the records that embodied its unprecedented, Privacy Act-violative personnel screening actions in this matter, under the auspices of its then-Chief of Staff to the Deputy Attorney General, thus presenting the legal issue of the proper litigation sanction for such gross evidence spoliation.  The District Court noted in its initial order under review that its Local Civil Rule 23.1(b) ruling meant that "it need not address" that among other merits of petitioners' renewed class certification motion.  Mem. Op. & Order of Apr. 19, 2010, at 6 n.5.